IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH A. ZADEH and JANE DOE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:15-CV-598 RP |
| | § | |
| MARI ROBINSON, in her individual | § | |
| capacity and in her official capacity | § | |
| SHARON PEASE, in her individual capacity, | § | |
| and KARA KIRBY, in her individual capacity. | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants' Motion to Dismiss and Request for Rule 7 Reply, filed October 9, 2015 (Dkt. 11), Plaintiffs' Response, filed October 23 (Dkt. 23), and Defendants' Reply, filed October 30, 2015 (Dkt. 20), as well as supplemental briefing filed at the Court's request. Defendants move the Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. The Court concludes that Defendants' motion should be granted in part and denied in part.

## I. Background

Plaintiff Joseph Zadeh is a doctor who specializes in internal medicine. (Pls.' Am. Compl. ¶¶ 44-46, Dkt. 7.)[1] He owns and operates a medical office in Euless, Texas. (Id.) Plaintiff Jane Doe is one of his patients. (Id. ¶ 4.) Dr. Zadeh is currently the subject of an administrative action by the Texas Medical Board ("TMB") before the State Office of Administrative Hearings ("SOAH")

---

[1] After Defendants filed their motion to dismiss, Plaintiffs filed their Second Amended Complaint (Dkt. 31). Plaintiffs' sole purpose in amending the Complaint was "to add a request that this Honorable Court declare Texas Occupations Code § 168.052 unconstitutional as applied." (Second Am. Compl. ¶ 2, Dkt. 31.) Otherwise, the two complaints are identical. Accordingly, the Second Amended Complaint does not render the motion to dismiss moot. The Court continues to cite the First Amended Complaint, but this order applies to the Second Amended Complaint, which technically is Plaintiffs' live pleading.

for alleged violations of the Texas Medical Practices Act and the Texas Medical Board Rules related to his prescription of controlled substances to patients under his care. (Defs.' Mot. Dismiss 2, Dkt. 11.) Dr. Zadeh is also the subject of an investigation by the Drug Enforcement Agency ("DEA") for alleged violations of the Controlled Substances Act. (*Id.*)

According to Plaintiffs' complaint, Defendant Mari Robinson, executive director of the TMB, signed an administrative subpoena for medical records located at Dr. Zadeh's office. (Pls.' Am. Compl. ¶ 10, Dkt. 7.) Among the records requested were those of Plaintiff Jane Doe. (*Id.* at ¶ 4.) The subpoena was expressly designated as a subpoena "instanter" and specifically demanded immediate compliance. (*Id.* at ¶ 23.) The day after the subpoena was signed, Defendants Sharon Pease and Kara Kirby, both investigators with the TMB, went to Dr. Zadeh's office with the subpoena. (*Id.* at ¶¶ 11-12.) Peace and Kirby were accompanied by two investigators from the DEA. (*Id.* ¶ 13.) At the time, Dr. Zadeh was out of the office, so the investigators presented the subpoena to Dr. Zadeh's medical assistant. (*Id.* ¶¶ 19-22.) Plaintiffs contend that Dr. Zadeh's assistant asked for an opportunity to confer with Dr. Zadeh's attorney but was told that if she did not turn over the records immediately, Dr. Zadeh would lose his medical license. (*Id.* ¶ 24.) Accordingly, Dr. Zadeh's assistant provided the investigators with the records requested in the subpoena. (*Id.* ¶ 27.) Plaintiffs claim that Dr. Zadeh's assistant did not give anyone consent to search the premises, but Defendants Pease and Kirby, along with the two DEA investigators, nonetheless executed a thorough search of the office. (*Id.* ¶¶ 24-26.) According to Plaintiffs, the investigators searched, reviewed, and copied Dr. Zadeh's medical records for several hours. (*Id.* ¶ 28.) Dr. Zadeh's lawyer eventually arrived and instructed the investigators to leave the premises. (*Id.* ¶ 29.)

Plaintiff Zadeh and his patient, Plaintiff Jane Doe, now bring suit against Defendants Robinson, Pease, and Kirby in their individual capacities, as well as Defendant Robinson in her official capacity. Plaintiffs allege that Defendants' use of an administrative subpoena to demand immediate production of medical records without providing an opportunity for judicial review

violated the Fourth Amendment. Moreover, Plaintiffs allege that Defendants' conduct violated their privacy and due process rights. Plaintiffs bring suit pursuant to 42 U.S.C. § 1983 and seek monetary damages. Plaintiffs also seek declaratory relief stating that certain Texas statutes and regulations are unconstitutional insofar that they allow the TMB to issue administrative subpoenas in violation of the Fourth Amendment.

## II. Discussion

Defendants make four arguments for dismissal: First, Plaintiffs do not have standing to raise the claim for declaratory relief. Second, this Court should abstain from hearing Plaintiffs' claims under the *Younger* abstention doctrine. Third, Defendant Robinson, in her official capacity, has sovereign immunity. Fourth, Defendants Robinson, Pease, and Kirby, in their individual capacities, have qualified immunity. The Court addresses each argument in turn.

### A. Standing

Defendants contend that Plaintiffs lack the necessary standing to pursue declaratory relief. Generally, standing requires plaintiffs to demonstrate (1) that they have suffered an injury in fact, (2) that the injury is fairly traceable to the defendant's conduct, and (3) that the injury can be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To pursue a declaratory judgment, a plaintiff must allege not only a past injury, but also a likelihood of future injury. *See Armstrong v. Turner Industries, Inc.*, 141 F.3d 554, 563 (5th Cir. 1998). "[S]tanding to seek declaratory relief respecting a challenged statute [is] not established *merely* by the fact that the plaintiff had on a single previous occasion been harmed by the statute's application, absent a realistic likelihood that the statute would in the future be applied to the detriment of the particular plaintiff in the action." *Brown v. Edwards*, 721 F.2d 1442, 1447 (5th Cir. 1984) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)).

Accordingly, the question for the Court is whether the allegations in the amended complaint support a "realistic likelihood" that the Texas Medical Board and its employees will again seek to serve an administrative subpoena instanter on Plaintiffs. With regard to Plaintiff Joseph Zadeh,

3

the Court finds such a likelihood. Dr. Zadeh is the subject of an ongoing administrative action brought by the TMB. (Defs.' Mot. Dismiss 2, Dkt. 11.)  Moreover, since filing this action, the TMB has announced that it is investigating multiple new complaints against Dr. Zadeh. (Pls.' Opposed Mot. Conduct Exp. Disc. 2-3, Dkt. 10.) The Court finds that Plaintiffs' allegations support a finding that it is reasonably likely that the TMB will again choose to subpoena Dr. Zadeh's records. Accordingly, there is a realistic likelihood that Dr. Zadeh will be subject to future injury and, therefore, Dr. Zadeh has standing to pursue declaratory relief.

However, Plaintiffs have not alleged sufficient facts to allow the Court to infer that Plaintiff Jane Doe is realistically likely to face future injury. According to the amended complaint, her medical records have already been subpoenaed and are in the possession of the TMB and the DEA. (Pls.' Am. Compl. ¶ 4, Dkt. 7.) Nothing in the amended complaint supports an inference that the TMB is using its subpoena power to request additional documents or records regarding Plaintiff Jane Doe, either from Dr. Zadeh or otherwise. Accordingly, the Court finds that there is not a realistic likelihood that Plaintiff Jane Doe will be subject to future injury, and therefore, Plaintiff Jane Doe does not have standing to pursue declaratory relief.

### B.  *Younger* Abstention Doctrine

Defendants next contend that Plaintiffs' claims are barred by the *Younger* abstention doctrine. In *Younger v. Harris*, the Supreme Court required that federal courts abstain from enjoining a pending state criminal proceeding. 401 U.S. 37 (1971). The Court subsequently applied *Younger* "to non-criminal judicial proceedings when important state interests are involved." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 423, 432 (1983). Dr. Zadeh is currently the subject of an administrative action by the TMB before the State Office of Administrative Hearings for alleged violations of the Texas Medical Practices Act and the Texas Medical Board Rules related to his prescription of controlled substances to patients under his care in part, and involving, in part, evidence acquired through the search at issue in this case. *See In Re Complaint Against Joseph Hassan Zadeh*, D.O., S.O.A.H. Dk. No. 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.DO

(Mar. 12, 2015). Accordingly, Defendants contend that *Younger* requires the Court to abstain from adjudicating Plaintiffs' claims.

*Younger* does not apply to claims for monetary damages. *Lewis v. Beddingfield*, 20 F.3d 123, 125 (5th Cir. 1994) ("*Younger* abstention doctrine is not applicable to a claim for damages."); *Allen v. Louisiana State Bd. of Dentistry*, 835 F.2d 100, 104 (5th Cir. 1988) ("[R]equests for monetary damages do not fall within the purview of the *Younger* abstention doctrine."); *Bishop v. State Bar of Texas*, 736 F.2d 292, 295 (5th Cir. 1984) ("The district court also erred in dismissing Bishop's claim for damages, a species of relief wholly unaffected by *Younger.*") Accordingly, it would be improper for the Court to abstain from hearing Plaintiffs' claims for damages.

However, Plaintiff Zadeh's claims for declaratory relief are potentially subject to *Younger* abstention. Three criteria are used to determine whether abstention is proper: "(1) the dispute should involve an 'ongoing state judicial proceeding;' (2) the state must have an important interest in regulating the subject matter of the claim; and (3) there should be an 'adequate opportunity in the state proceedings to raise constitutional challenges.'" *Wightman v. Texas Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996) (quoting *Middlesex County Ethics Committee*, 457 U.S. at 432).

In *Perez v. Texas Medical Board*., the Fifth Circuit applied these criteria to a case where a physician assistant was subject to a disciplinary proceeding by the Texas Physician Assistant Board. 556 F. App'x 341 (5th Cir. 2014). The circuit court held that *Younger* abstention barred the physician assistant from suing to enjoin the Texas Medical Board. On the first prong, the court held that an administrative disciplinary hearing before SOAH is an "ongoing state judicial proceeding" under *Younger. Id.* at 342. On the second prong, the court held that "the State of Texas has a strong interest in protecting the public through the regulation and oversight of those practicing medicine in the state." *Id.* On the third prong, the court held that the plaintiffs would

have an adequate opportunity to raise their constitutional issues in state court because Texas law provides for judicial review of administrative decisions. *Id.* at 342-43.

The relevant facts in this case are similar to those in *Perez.* First, Dr. Zadeh is subject to an ongoing administrative disciplinary proceeding before SOAH. Such a proceeding counts as an "ongoing state judicial proceeding." *Id.* at 342. Second, the state has an important interest in regulating the practice of medicine. *Id.* Finally, Plaintiff Zadeh has a right to appeal the outcome of the pending state administrative proceeding in court. *See* Tex. Occ. Code. § 164.009. If Plaintiff Zadeh appeals an adverse ruling to state court he has the right to raise federal constitutional issues. *See* Tex. Gov't Code § 200.174. Thus, the ongoing administrative proceeding against Plaintiff Zadeh provides him an adequate opportunity to raise the constitutional issues alleged in this case. *See Perez*, 556 F. App'x at 342-43. The Court concludes that the *Younger* abstention doctrine requires this Court to abstain from adjudicating Plaintiff Zadeh's claims for declaratory relief.

### C. Sovereign Immunity

Defendant Mari Robinson, in her official capacity, contends that she is protected by sovereign immunity. "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). However, "[t]he Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State." *Id.* Moreover, "when a plaintiff sues a state official alleging a violation of federal law, the federal court may award [relief] that governs the official's future conduct, but not one that awards retroactive monetary relief." *Id.* at 102-103; *see also Edelman v. Jordan*, 415 U.S. 651 (1974) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.")

6

Here, Plaintiffs seeks both damages and declaratory relief. The Court concludes that the Eleventh Amendment bars Plaintiffs from seeking monetary damages from Defendant Robinson, in her official capacity. However, although sovereign immunity would not bar Plaintiffs from suing Defendant Robinson, in her official capacity, for non-monetary relief, the Court has concluded above that it should abstain from hearing such claims.

### D. Qualified Immunity

Defendants Robinson, Pease, and Kirby, in their individual capacities, contend that they are protected by qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). The burden rests with the plaintiff to rebut the defendant's qualified immunity defense. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

There are two steps to determining whether a defendant is protected by qualified immunity. *See Saucier v. Katz*, 533 U.S. 194 (2001) (endorsing the traditional two-step approach to assessing a qualified immunity defense). First, the court asks whether the official "violated a statutory or constitutional right." *Morgan*, 659 F.3d at 371 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). Second, the court asks whether "the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2083). A court may, at its discretion, skip the first step and begin its analysis by asking whether the right in question was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (making *Saucier*'s two-step sequence discretionary). However, beginning the analysis by asking whether a right was violated "is often beneficial." *Id.*

The Court now turns to Plaintiffs' Fourth Amendment claims and begins with the first step of the qualified immunity analysis by asking whether Plaintiff has alleged the violation of a Fourth Amendment right.

1.   Plaintiffs' Fourth Amendment Claims (Counts 1-4, 7 & 8)

    a.   Qualified Immunity Step One

The first step of the qualified immunity analysis is to determine whether the plaintiff has alleged a violation of a constitutional right. Here, Plaintiffs contend that Defendants violated the Fourth Amendment by signing and executing an administrative subpoena instanter. Plaintiffs allege that the subpoena signed by Defendant Robinson demanded immediate compliance and that Defendants Pease and Kirby refused Plaintiff Zadeh's assistant an opportunity to consult a lawyer before complying with the subpoena. (Pl.'s Am. Compl. ¶¶ 23-24, Dkt. 7.)  Moreover, Plaintiffs allege that Defendants Pease and Kirby searched Dr. Zadeh's office without consent. (*Id.* ¶¶ 24-26.) In short, Plaintiffs argue that Defendants violated the Fourth Amendment by treating an administrative subpoena as if it were a search warrant. (*See id.* ¶ 81.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. The Supreme Court has repeatedly held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception is for administrative searches. *See Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523, 534 (1967).

Administrative searches are not immune from Fourth Amendment scrutiny. As a general rule, when an agency intends to execute a search pursuant to the administrative search exception, it must provide an opportunity for precompliance judicial review. *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2452 (2015) (citing *Donovan v. Lone Steer, Inc.*, 464 U.S. 408 (1984); *See v. Seattle*, 387 U.S. 541 (1967)). A more relaxed standard is applied to administrative searches of "closely regulated" businesses. *Patel*, 135 S. Ct. at 2454. Under *New*

*York v. Burger*, an agency can search a closely regulated business without providing an opportunity for precompliance judicial review, but only if the search is necessary to further a regulatory scheme that is informed by a substantial government interest. 482 U.S. 691, 702-03 (1987). Moreover, the regulatory scheme must provide "a constitutionally adequate substitute for a warrant." *Id.* at 703 (quoting *Donovan v. Dewey*, 452 U.S. 594, 600 (1981).

Accordingly, the first step in assessing the constitutionality of an administrative search is to determine whether the subject of the search is a closely regulated business. A business is considered closely regulated if it is subject to regulation so pervasive that its owners have a "reduced expectation of privacy." *Id.* at 701. The Supreme Court has identified only four industries that fall within the scope of this exception. *Id.* at 691 (automobile junkyards); *Donovan*, 452 U.S. at 594 (mining); *United States v. Biswell*, 406 U.S. 311 (1972) (firearms dealing); *Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970) (liquor sales). These industries all "have such a history of government oversight that no reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an enterprise. . . . [W]hen an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978) (internal citations omitted).

In *City of Los Angeles v. Patel*, the Supreme Court held that hotels are not closely regulated businesses. 135 S. Ct. at 2454-57. In doing so, the Court made clear "that the closely regulated industry . . . is the exception" and cautioned against allowing "what has always been a narrow exception to swallow the rule." *Id.* at 2455 (quoting *Barlow's*, 436 U.S. at 313). The Supreme Court allowed that "[h]istory is relevant when determining whether an industry is closely regulated." *Id.* But, the Court differentiated between industries with a history of regulation, generally, and industries with a history of warrantless inspections, specifically. *Id.* (holding that, for example, "laws obligating inns to provide suitable lodging to all paying guests are not the same as laws subjecting inns to warrantless searches"). The appropriate inquiry,

then, is to ask whether historically "government authorities could have viewed [the business's] documents on demand without [the business's] consent." *Id.* at 2456. A closely regulated industry is one with such a consistent history of warrantless inspections that an industry participant has "no reasonable expectation of privacy." *Id.* at 2454 (quoting *Barlow's, Inc.* 436 U.S. at 313).

The medical profession is not such an industry. While the practice of medicine is admittedly subject to significant oversight, there is no history of warrantless inspections of doctor's offices. In fact, the prevailing tradition is quite to the contrary. There is a long history of recognizing the need for privacy in the medical profession out of respect for doctor-patient confidentiality. It strains credibility to suggest that doctors and their patients have no reasonable expectation of privacy. *See, e.g.*, *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2668 (2011) (stipulating that "for many reasons, physicians have an interest in keeping their prescription decisions confidential"); *Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001) (acknowledging that a medical patient has a "reasonable expectation of privacy" and can assume that medical records "will not be shared with nonmedical personnel without her consent"); *In re Vioxx Products Liab. Litig.*, No. MDL 1657, 2005 WL 2036797, at *3-4 (E.D. La. July 22, 2005) (tracing the history of doctor-patient confidentiality to fifth century B.C. and arguing that the erosion of privacy protections in the medical field could reduce the quality of medical care). Thus, the Court concludes that the practice of medicine is not a closely regulated industry. *See Margaret S. v. Edwards*, 488 F. Supp. 181, 216-17 (E.D. La. 1980) (holding that "the health industry . . . is not a closely regulated industry" given the "history of respect towards the recognized need for privacy in the doctor-patient relationship").

Given that the medical profession is not a closely regulated industry for Fourth Amendment purposes, the general rule for administrative searches applies: "in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Patel*, 135 S. Ct. at 2452. Plaintiffs

allege that the TMB served Dr. Zadeh's office with an administrative subpoena which demanded immediate compliance. Moreover, Plaintiff Zadeh asserts that when the subpoena was served on his office, his assistant was refused an opportunity to seek counsel before complying. Finally, Plaintiffs allege that Defendants, in addition to demanding production of certain medical records, also physically searched Dr. Zadeh's office. Accordingly, the Court concludes that the allegations, taken as true and viewed in a light favorable to Plaintiffs, suggest a Fourth Amendment violation.

Even if the medical profession were to be considered closely regulated, the Court finds that Plaintiffs' allegations, if proven, would still establish a Fourth Amendment violation. A regulatory agency does not have free license to execute warrantless searches on closely regulated businesses. In *New York v. Burger*, the Supreme Court set out a three part test for determining whether the warrantless search of a closely regulated business is consistent with the Fourth Amendment. 482 U.S. at 702-03. First, "there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." *Id.* at 702 (quoting *Donovan*, 452 U.S. at 602). Second, "the warrantless inspections must be 'necessary to further [the] regulatory scheme.'" *Id.* at 702-03 (quoting *Donovan*, 452 U.S. at 600). Third, the regulatory scheme must provide "a constitutionally adequate substitute for warrant." *Id.* at 703 (quoting *Donovan*, 452 U.S. at 603). In order to meet the third prong of the *Burger* test, the regulatory scheme must provide for searches to be executed with sufficient "certainty and regularity" that the business owner "cannot help but be aware that his property will be subject to periodic inspections." *Id.* at 703 (quoting *Donovan*, 452 U.S. at 600, 603). Put differently, "the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Id.*

Defendants claim that the search of Dr. Zadeh's office was conducted pursuant to two distinct sources of statutory authority. First, Defendants point to the TMB's authority to issue

subpoenas, created by Tex. Occ. Code § 153.007 and implemented at 22 Tex. Admin. Code § 179.4(a) (collectively, "the TMB's subpoena authority"). Second, Defendants point to the TMB's authority to inspect pain management clinics, created by Texas Occupations Code § 168.00 *et seq.* and implemented at 22 Texas Administrative Code § 195.3 (collectively, "the TMB's inspection authority").

The Court assumes that the TMB's subpoena authority and the TMB's inspection authority survive the first two prongs of the *Burger* test. It is difficult to dispute that the state has a substantial interest in regulating and controlling the provision of prescription drugs and that doing so may require the use of subpoenas and inspections. The Court focuses its inquiry on the much narrower question of whether TMB's subpoena authority and TMB's inspection authority provide an adequate substitute for a warrant as required by the third prong of the *Burger* test.

      i.    TMB's Subpoena Authority

The TMB is afforded the authority by statute to "issue a subpoena or a subpoena duces tecum to compel the attendance of a witness and the production of books, records, and documents." Tex. Occ. Code § 153.007(a). The TMB has interpreted this statute, through implementing regulation, to require the following:

> Upon the request by the board or board representatives, a licensee shall furnish to the board copies of medical records or the original records within a reasonable time period, as prescribed at the time of the request. 'Reasonable time,' as used in this section, shall mean fourteen calendar days or a shorter time if required by the urgency of the situation or the possibility that the records may be lost, damaged, or destroyed.

22 Tex. Admin. Code § 179.4(a).[2] The Court concludes that insofar that the alleged search of Dr. Zadeh's office and records was conducted pursuant to the TMB's subpoena authority, the search was inconsistent with the third prong of the *Burger* test.

_____

[2] Plaintiffs repeatedly suggest that this regulation is an improper reading of the TMB's statutory authority. Plaintiffs contend that the statute gives the TMB the limited power to issue subpoenas, which by definition, allow for an opportunity to seek judicial review prior to compliance. Accordingly, Plaintiffs argue

First, the search of Dr. Zadeh's office and records, as alleged by Plaintiffs, exceeded the TMB's subpoena authority. Plaintiffs assert that Defendants Pease and Kirby physically searched Dr. Zadeh's office, despite Dr. Zadeh's assistant refusing to consent to the search. (Pls.' Am. Compl. ¶¶ 24-26, Dkt. 7.) The TMB's subpoena authority is limited to compelling the production of books, records, and documents or compelling the attendance of a witness. Tex. Occ. Code § 153.007(a). The TMB is not authorized to physically search or inspect a doctor's office.[3] *Id.* Accordingly, Plaintiffs' allegations support a finding that the execution of the subpoena and subsequent search of Dr. Zadeh's office was done in contravention of, not pursuant to, the relevant regulatory scheme.

The third prong of the *Burger* test aspires to ensure that closely regulated businesses are put on notice that they will be subject to regular searches and that their owners are able to assess whether those searches are conducted in accordance with the law. A regulatory scheme can only put a business owner on notice of searches that fall within its parameters. Given that the alleged search of Dr. Zadeh's exceeded the TMB's subpoena authority it, therefore, must also fail the third prong of the *Burger* test.

Second, the TMB's subpoena authority is purely discretionary. The TMB has the authority to issue administrative subpoenas to compel the production of medical records. Tex. Occ. Code §

---

that the TMB has through the creative interpretation of its own statute conferred upon itself the authority to conduct warrantless searches. However, the question of whether the TMB has appropriately interpreted its statutory subpoena authority is not relevant to the question of whether the overall regulatory scheme survives Fourth Amendment scrutiny under *Burger*. Accordingly, the Court reads Tex. Occ. Code § 153.007(c) and 22 Tex. Admin. Code § 179.4(a) together and inquires as to whether the combined regulatory scheme serves as an adequate substitute for a warrant.

[3] Plaintiffs would go further. They contend that the TMB is not authorized to issue subpoenas instanter, arguing that 22 Tex. Admin. Code § 179.4(a) requires the provision of a "reasonable time period" to comply with a subpoena's terms. The regulation states that by default a "reasonable time period" means fourteen calendar days, but the TMB may provide less time to comply "if required by the urgency of the situation or the possibility that the records may be lost, damaged, or destroyed." From Plaintiffs' perspective, demanding immediate compliance is inconsistent with the regulation's requirement that the subpoenaed party be provided a reasonable amount of time to comply. However, the Court finds that the issuance of a subpoena instanter which demands immediate compliance is consistent with the language in the regulation allowing the TMB to provide less than fourteen days to comply if there is a possibility that records will be lost, damaged, or destroyed. Accordingly, the Court's finding that the alleged search exceeded the TMB's authority is limited to the allegation that Defendants searched and inspected Dr. Zadeh's office.

153.007(c). The TMB is allowed to choose which doctors to subpoena and to do so at a frequency it determines. Accordingly, TMB's subpoena authority cannot meet the third prong of the *Burger* test because it "fails sufficiently to constrain . . . discretion as to which [businesses] to search and under what circumstances." *Patel*, 135 S. Ct. at 2456. The inspection authority does not provide clinics "certainty" that they will be subject to inspection with "regularity." *Burger*, 482 U.S. at 703 (quoting *Donovan*, 452 U.S. at 600, 603). Therefore, the Court concludes that the alleged search of Dr. Zadeh's office, insofar that it was conducted pursuant to the TMB's subpoena authority, is inconsistent with the third prong of *Burger* and, thus, violated the Fourth Amendment.

   ii. TMB's Inspection Authority

  The TMB is afforded the authority by statute to "inspect a pain management clinic, including the documents of a physician practicing at the clinic, as necessary to ensure compliance with this chapter." Tex. Occ. Code § 168.052. The implementing regulation to the statute provides in part the following:

> (b) Unless it would jeopardize an ongoing investigation, the board shall provide at least five business days' notice before conducting an on-site inspection under this section.
>
> (c) This section does not require the board to make an on-site inspection of a physician's office.
>
> (d) The board shall conduct inspections of pain management clinics if the board suspects that the ownership or physician supervision is not in compliance with board rules.

22 Tex. Admin. Code § 195.3. The Court concludes that insofar that the alleged search of Dr. Zadeh's office was conducted pursuant to the TMB's inspection authority, the search was inconsistent with the third prong of the *Burger* test.

  First, the search, as alleged, exceeded the TMB's inspection authority. The parties dispute whether Dr. Zadeh's medical practice meets the definition of a pain management clinic. The statute defines a pain management clinic as a "facility for which a majority of patients are issued

14

on a monthly basis a prescription for opioids, benzodiazepines, barbiturates, or carisoprodol, but not including suboxone." Tex. Occ. Code § 168.001. The statute expressly exempts from the definition any "clinic owned or operated by a physician who treats patients within the physician's area of specialty and who personally uses other forms of treatment, including surgery, with the issuance of a prescription for the majority of the patients." *Id.* § 168.002(7).

Plaintiffs allege that Texas Occupations Code § 168 does not apply to Dr. Zadeh's medical clinic because the clinic is exempt from the statutory definition of a pain management clinic. (Second Am. Compl. ¶ 49.) They further claim that no governmental agency had reason to believe that Dr. Zadeh's medical office was a pain management clinic. (*Id.* ¶ 86.) Finally, Plaintiffs contend that the TMB had previously provided Dr. Zadeh written instructions acknowledging that his office was not a pain management clinic and instructing him not to register as a pain management clinic. (*Id.* ¶¶ 50, 85.) Moreover, Plaintiffs pled the specific facts necessary to indicate that Dr. Zadeh's clinic was exempt under § 168.002(7), specifically that (a) Dr. Zadeh owns and operates the facility in question, (b) the facility is not registered as a pain management clinic, (c) Dr. Zadeh treats patients within his area of specialty at the facility, and (d) he personally uses other forms of treatment with the issuance of a prescription for a majority of the patients treated at the facility. (*Id.* ¶ 48.) Accordingly, Plaintiffs' allegations suggest that Dr. Zadeh's medical office does not meet the statutory definition of a pain management clinic.

Defendants argue that the TMB's inspection authority allows inspections of "actual or suspected pain management clinics." (Def.'s Supp. Briefing 2, Dkt. 24.) However, the legal authorities cited by Defendants do not support their contention that the TMB has the authority to inspect any facility it suspects is a pain management clinic. *See* Tex. Occ. Code § 168.052 (authorizing inspections of pain management clinics, not suspected pain management clinics); 22 Tex. Admin. Code § 195.3 (making no mention of suspected pain management clinics). Yet, even if Defendants' interpretation of the TMB's inspection authority is correct, there is nonetheless a dispute between the parties as to whether the TMB suspected Dr. Zadeh's

medical office met the definition of a pain management clinic. As discussed above, Plaintiffs pled that the TMB had previously provided Dr. Zadeh written instructions acknowledging that his clinic is exempt from the definition of pain management clinic. (Second Am. Compl. ¶¶ 50, 85.) Accordingly, Plaintiffs assert in their complaint that "[n]o state governmental agency had justifiable reason to believe Dr. Zadeh's medical facility was not exempt from pain management clinic registration based on Texas Occupations Code § 168.002(7)." (*Id.* ¶ 86.) Moreover, Plaintiffs contend that the contents of the subpoena were inconsistent with an investigation of whether Dr. Zadeh was illegally operating a pain management clinic. Plaintiffs allege that the subpoena at issue requested the records for sixteen patients (*id.* ¶ 23(b)) and that in September 2013 Dr. Zadeh averaged approximately ten patient visits per day (*id.* ¶ 44). However, to be considered a pain management clinic a majority of the patients on a monthly basis must be prescribed one of four types of painkillers. Tex. Occ. Code § 168.001. Plaintiffs allegations, therefore, suggest that the subpoena was unlikely intended to prove the facility's status as a pain management clinic given that the records purportedly requested were not sufficient to prove that a majority of the facility's patients were being prescribed one of the four relevant painkillers. Accordingly, Plaintiffs' allegations suggest that the TMB did not suspect that Dr. Zadeh's medical office constituted a pain management clinic.

The Court concludes that the search of Dr. Zadeh's office and records, as alleged by Plaintiffs, exceeded the TMB's inspection authority. As discussed above, a statute cannot put a business on notice of a search that falls outside its parameters. Therefore, Plaintiffs' allegations support a finding that the TMB's inspection authority did not serve as an adequate substitute for a warrant for the search of Dr. Zadeh's office, and consequently, the search was inconsistent with the third prong of the *Burger* test.

Second, the TMB's inspection authority, like its subpoena authority, is purely discretionary. The statute provides that the TMB has the discretion to inspect pain management clinics "as necessary to ensure compliance." Tex. Occ. Code § 168.052. The implementing regulations

provide that the TMB should inspect a facility if it "suspects that the ownership or physician supervision is not in compliance with board rules." 22 Tex. Admin. Code § 195.3(d). However, the regulation does not require the TMB to inspect pain management clinics. *Id.* § 195.3(c). The TMB is allowed to choose which clinics to inspect and to do so at a frequency it determines. Accordingly, TMB's inspection authority cannot meet the third prong of the *Burger* test because it "fails sufficiently to constrain . . . discretion as to which [businesses] to search and under what circumstances." *Patel*, 135 S. Ct. 2443 at 2456. The inspection authority does provide clinics "certainty" that they will be subject to inspections with "regularity." *Burger*, 482 U.S. at 703 (quoting *Donovan*, 452 U.S. at 600, 603). Therefore, the Court concludes that the alleged search of Dr. Zadeh's office, insofar that it was conducted pursuant to the TMB's subpoena authority, is inconsistent with the third prong of *Burger* and, thus, violated the Fourth Amendment.

In sum, the Courts finds that the alleged use of an administrative subpoena instanter to search Dr. Zadeh's office violated Plaintiff's Fourth Amendment rights. If, as the Court concludes, the medical profession is not a closely regulated industry, then the alleged search violated Plaintiff's right to an opportunity for judicial review prior to complying with an administrative subpoena. Alternatively, if the medical profession is a closely regulated industry, then the alleged search violated Plaintiffs' right to be put on notice that Dr. Zadeh's office and records would be subject to regular inspections. Either way, the allegations, taken as true and viewed in a light favorable to Plaintiffs, suggest the violation of a constitutional right.

### b. Qualified Immunity Step Two

The second step of the qualified immunity analysis is to determine whether the constitutional right in question was clearly established at the time of its alleged violation. For a right to be clearly established there must be a "controlling authority or a robust consensus of persuasive authority . . . that defines the contours of the right in question with a high degree of particularity." *Morgan*, 659 F.3d at 371 (quoting *al-Kidd*, 131 S. Ct. at 2084). The law must "so clearly and

unambiguously" prohibit the conduct in question that "every reasonable official would understand what he is doing violates the law." *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2083). Put differently, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2083). "The *sine qua non* of the clearly-established inquiry is 'fair warning.'" *Id.* at 372 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). "[I]f judges . . . disagree on a constitutional question, it is unfair to subject [government officials] to money damages for picking the losing side of the controversy." *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 618 (1999)).

Before proceeding, the Court notes that Plaintiffs rely heavily throughout their briefing on the Supreme Court's ruling in *City of Los Angeles v. Patel*, 135 S. Ct. 2443 (2015). However, the Supreme Court did not rule in *Patel* until more than a year after the alleged search at issue in this case. Accordingly, while *Patel* guides the Court's decision as to whether a constitutional right was violated, it plays no role in the Court's inquiry as to whether the right was clearly established at the time of its violation.

The rule that an agency must provide an opportunity for a party to challenge an administrative subpoena prior to compliance is longstanding and unambiguous. *See Donovan v. Lone Steer, Inc.*, 464 U.S. at 415 ("[A]lthough our cases make it clear that [an agency] may issue an administrative subpoena without a warrant, they nonetheless provide protection for a subpoenaed employer by allowing him to question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it, by raising objections in an action in district court."); *City of Seattle*, 387 U.S. at 544-45 ("It is now settled that, when an administrative agency subpoenas . . . books or records, the Fourth Amendment requires that the subpoena . . . may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply."). However, this rule does not apply to closely regulated industries. *See Burger*, 482 U.S. at 718-19. Thus, if it was unclear whether the medical profession was a closely

regulated industry, then Defendants could have reasonably believed they had no obligation to provide an opportunity for precompliance review. Accordingly, the Court begins by asking whether at the time of the search of Dr. Zadeh's office, it was clearly established that the medical profession is a closely regulated industry was clearly established.

The Texas Attorney General has clearly stated that the medical profession is not a closely regulated industry. Tex. Att'y Gen. Op. No. JC-274. In the opinion issued in 2000, the Attorney General advised that the Texas State Board of Podiatric Medical Examiners lacked the authority to conduct warrantless inspections of its licensees, because the medical profession is not a closely regulated industry under the Fourth Amendment. *Id.* The opinion reasoned that the medical profession "has no long history of warrantless state inspection." *Id.* at 3 (internal quotation marks omitted) (quoting *Margaret S. v. Edwards*, 488 F. Supp. 181, 216 (E.D. La. 1980)). Moreover, it is an industry "with a history of respect towards the recognized need for privacy in the doctor-patient relationship." *Id.* (quoting *Margaret S.*, 488 F. Supp. at 216). The opinion "found no evidence of pervasive regulation of the practice of . . . medicine . . . nor any Texas case that would furnish any basis for concluding that it should be so characterized." *Id.*

On the other hand, the Fifth Circuit has treated the dental profession as a closely regulated industry. In *Beck v. Texas State Bd. of Dental Examiners*, the circuit court confronted a set of facts similar those before the Court now. 204 F.3d 629 (5th Cir. 2000). In that case a dentist sued an investigator for the Texas State Board of Dental Examiners, alleging that the investigator had conducted an illegal search when he inspected the dentist's office and reviewed his records. The Fifth Circuit held that the investigator was protected by qualified immunity because the warrantless inspection did not violate a clearly established constitutional right. *Id.* at 638-39. The court did not explicitly address the question of whether the dental profession is a closely regulated industry. However, the Court implicitly treated the dental profession as a closely regulated industry by evaluating the allegations under *Burger* and concluding that the dentist had no right to precompliance judicial review. *See id.* at 639.

19

In light of the Fifth Circuit's holding in *Beck*, the Court concludes that Defendants could reasonably have believed that the medical profession is considered a closely regulated industry and, thus, fairly concluded that the precompliance review requirement does not apply to the search of a medical office. Accordingly, the Court stipulates that, for the purpose of the qualified immunity analysis, the medical profession is a closely regulated industry and turns to the question of whether Plaintiffs have alleged the violation of a clearly established right under the more accommodating standard for these businesses.

In *Burger*, the Supreme Court set out the test for determining whether the administrative search of a closely regulated business survives Fourth Amendment scrutiny. 482 U.S. at 702-03. The third and final prong of that test requires that the search of a closely regulated business be executed pursuant to a statutory scheme that provides "certainty" that the business will be inspected with "regularity." *Id.* at 703 (quoting *Donovan v. Dewey*, 452 U.S. at 603.) *Burger* clearly establishes that the owner of a closely regulated business has a right to be put on notice that his or her business "will be subject to periodic inspections undertaken for specific purposes." *Id.* (quoting *Donovan v. Dewey*, 452 U.S. at 600).

While it may be difficult to define the exact contours of the right created by the third prong of the *Burger* test, the jurisprudence in this field is unambiguous in two regards. First, a search that is not conducted pursuant to a regulatory scheme cannot be constitutional. The Supreme Court requires that regulatory statute "perform the . . . basic functions of a warrant" by "advising the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope." *Id.* at 703. A statute cannot put a business on notice of searches that fall outside its scope or contravene its parameters. Second, the regulatory statute must do *something* to "limit the discretion of the inspecting officers." *Id.* (citing *United States v. Biswell*, 406 U.S. 311, 315 (1972).

For the reasons discussed in the Court's analysis under the first step of the qualified immunity inquiry, the Court finds that search of Dr. Zadeh's office, as alleged by Plaintiffs,

clearly violates the third prong of the *Burger* test. *See* discussion *supra* pp. 14-17. First, Plaintiffs allege that the search overstepped the TMBs authority insofar that (a) the TMB's subpoena authority does not authorize it to physically inspect or search a doctor's office and (b) the TMB's inspection authority is inapplicable as Dr. Zadeh's office does not meet the statutory definition of a pain management clinic. Second, the TMB's subpoena and inspection authorities are purely discretionary. Nothing in the language of either statute creates certainty that a medical office will inspected with regularity. Accordingly, the TMB's subpoena and inspection authorities did not put Dr. Zadeh on notice that his office would be subject to regular inspections.

Defendants contend that even if the Court is right that Plaintiffs' allegations suggest a clear violation of the third prong of the *Burger* test, the contours of that right were not clearly established at the time of the search of Dr. Zadeh's office. In support of this contention, Defendants cite two cases: *Ellis v. Mississippi Dep't of Health*, 344 F. App'x 43 (5th Cir. 2009) and *Beck*, 204 F.3d 629.

In *Ellis*, the Fifth Circuit upheld the warrantless inspection of a child care facility by the Mississippi Department of Health, which was conducted pursuant to a statute which "permits inspections by the agency 'as often as deemed necessary.'" 344 F. App'x at 45 (citing Miss. Code. § 43-20-15). The statute in question required that inspections of child care facilities "be made at least once a year." Miss. Code. § 43-20-15. Accordingly, the statute puts the owners of child care facilities in Mississippi on notice that their businesses will be subject to inspections with certainty and regularity and is therefore consistent with the third prong of the *Burger* test. The TMB, however, is not required to inspect or subpoena medical offices with any minimum frequency. The agency's subpoena and inspection authorities are purely discretionary. As such, the present case is easily distinguished from *Ellis.*

The Fifth Circuit's holding in *Beck* proves more troublesome. In that case, the court of appeals upheld the warrantless inspection of a dental office. With regard to the third prong of

the *Burger* test, the court found the Texas Controlled Substances Act authorized on demand inspections and, thus, provided the dentist with sufficient notice that his office would be subject to periodic warrantless searches. *Beck*, 204 F.3d at 639.

The Fifth Circuit found that the inspection of the dental office was constitutional despite the fact that the Texas Controlled Substances Act does not provide any certainty that dental offices will be inspected nor does it limit the discretion of inspecting officers as to when or under what circumstances an office will be inspected. *See Beck*, 204 F.3d at 639 (upholding, as consistent with the third prong of *Burger*, § 5.01(c) of the Texas Controlled Substances Act which gives officers "the right to enter premises and conduct such inspection at reasonable times upon stating his purpose and presenting to the owner . . . of the premises appropriate credentials and written notice of his inspection authority"). This holding appears to be in tension with the third prong of *Burger*, which requires that a regulatory scheme that allows warrantless inspections to place "appropriate restraints upon the discretion of the inspecting officers" such that the business owner "cannot help but be aware that his property will be subject to periodic inspections." *Burger*, 482 U.S. at 711, 705 n.16. Thus, in light of the Fifth Circuit's holding in *Beck*, Defendants reasonably could have believed that a search conducted pursuant to a purely discretionary inspection scheme was legal.

However, *Beck* provides no support for the proposition that a statute can serve as an adequate substitute for a warrant in a case where the search goes beyond what is authorized by the statute. In *Beck*, there was no dispute as to whether the Texas Controlled Substances Act authorized the inspection of the dentist's office. At issue was simply whether the language of the statute provided sufficient clarity to serve as a substitute for a warrant. Here, Plaintiffs contend that Defendants overstepped their statutory authority when they physically searched and inspected Dr. Zadeh's office and files. If true, Defendants' conduct was clearly inconsistent with *Burger* which requires that a warrantless inspection at the very least be conducted pursuant to a regulatory scheme.

In sum, the Court concludes that at the time of the search of Dr. Zadeh's office, it was unclear whether the medical profession should be considered a closely regulated business. Moreover, it was also unclear to what degree, if at all, a regulatory scheme allowing for the warrantless inspection of a closely regulated business must limit the discretion of the inspecting officer. But, it was clearly established that if a state official executes a warrantless search of a closely regulated business, the search must, at the very least, be conducted pursuant to a clear regulatory scheme. This basic rule ensures that the owner of a business is given fair notice that his or business may be subject to warrantless inspection.

Here, the allegations, taken as true and viewed in a light favorable to Plaintiffs, suggest that the search of Dr. Zadeh's office was not conducted pursuant to such a regulatory scheme and thus Plaintiffs had no reason to suspect that Dr. Zadeh's office would be subject to regular inspection. Thus, with regard to Plaintiffs' Fourth Amendment allegations, the Court concludes that Defendants' qualified immunity defense should be denied. The Court, however, acknowledges that the present inquiry is limited to assessing the sufficiency of Plaintiffs allegations. Plaintiffs have alleged, but have not yet proven, a violation of their clearly established rights under the Fourth Amendment. *See McKee v. Lang*, 393 F. App'x 235, 238 (5th Cir. 2010) ("[W]e take the well-pleaded facts of the complaint as true and construe those facts in the light most favorable to the plaintiff when assessing a motion to dismiss based upon qualified immunity.").

2.  Plaintiffs' Privacy Claims (Counts 5 & 6)

Plaintiffs also allege that Defendants violated their constitutional and statutory rights to privacy. Here, the Court exercises its discretion to begin with inquiry of whether the right that was allegedly violated was clearly established at the time of the conduct in question.

Plaintiffs argue that Defendants (1) illegally provided DEA agents access to Dr. Zadeh's records and (2) illegally posted patient data on the TMB website.  Plaintiffs vaguely suggest that this conduct contravened a number of privacy protections under both state and federal law. To

the extent that Plaintiffs allege a violation of state privacy law, their allegations do not support a cause of action under 42 U.S.C. § 1983, which provides a remedy for "the deprivation of any federally protected rights." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 658 (1978). To the extent that Plaintiffs allege a violation of the federal constitutional right to privacy, the Court finds that Plaintiffs have not shown that the relevant law was clearly established at the time of the alleged violation. Plaintiffs do not cite a single federal authority proscribing the sharing of medical records between a state investigative agency and a federal law enforcement agency. Similarly, Plaintiffs do not cite a single federal authority prohibiting the posting of redacted patient information online. It may be that these allegations implicate constitutional privacy concerns. However, to overcome a qualified immunity defense the plaintiff "must be able to point to controlling authority . . . that defines the contours of the right in question with a high degree of particularity." *Morgan*, 659 F.3d at 371-72. Plaintiffs have not done so here. Therefore, Defendants are entitled to immunity with regard to Plaintiffs' privacy allegations.

3. Plaintiff's Due Process Claims (Counts 9 & 10)

Finally, Plaintiffs allege that Defendants violated their constitutional right to procedural due process. (Pls.' Am. Compl. ¶¶ 123-28, Dkt. 7.) Again, the Court exercises its discretion to begin with the second step of the qualified immunity analysis.

Plaintiffs argue that they "were entitled to notice and a meaningful opportunity to be heard before Dr. Zadeh's medical records were searched and/or seized by the TMB." (*Id.*) Plaintiffs allegations here are identical to those raised as part of their Fourth Amendment claims, with the exception that Plaintiffs seek redress under the Due Process Clause. However, Plaintiffs do not cite a single authority creating a due process right to precompliance review of an administrative subpoena. It may be that Plaintiffs' allegations implicate due process concerns in addition to Fourth Amendment concerns. However, the Court finds that the relevant law was not clearly established at the time of the alleged violation. Therefore, Defendants are entitled to immunity with regard to Plaintiffs' due process allegations.

4.   Defendants' Request for a Rule 7 Reply

Finally, Defendants invoke Federal Rule of Civil Procedure 7(a) and request that Plaintiffs be ordered to file a reply pleading specific facts tailored to Defendants' qualified immunity defense. "When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail." *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). The Court concludes that the factual allegations contained in the amended complaint are sufficiently specific to allow for a fair assessment of Defendants' qualified immunity defense. Further detail would be of little assistance in determining whether Plaintiffs have alleged the violation of a clearly established right. Accordingly, the Court declines to exercise its discretion to order a Rule 7 reply.

### III. Conclusion

The Court finds that (1) Plaintiff Jane Doe does not have standing to pursue declaratory relief; (2) Plaintiff Zadeh's claims for declaratory relief are barred by the *Younger* abstention doctrine; (3) the doctrine of sovereign immunity prevents either Plaintiff from suing Defendant Robinson in her official capacity for damages; (4) the doctrine of qualified immunity requires the Court to dismiss Plaintiffs' privacy claims and due process claims.

Accordingly, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss and Request for Rule 7 Reply (Dkt. 11).

Plaintiffs' claims for declaratory relief are hereby **DISMISSED WITHOUT PREJUDICE.**

Plaintiffs' claims against Defendant Mary Robinson, in her official capacity, for monetary damages are hereby **DISMISSED WITH PREJUDICE.**

Plaintiffs' privacy claims (Counts 5 & 6) are hereby **DISMISSED WITH PREJUDICE.**

Plaintiffs' due process claims (Counts 9 & 10) are hereby **DISMISSED WITH PREJUDICE.**

**SIGNED** on March 29, 2016.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE