IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH A. ZADEH and JANE DOE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:15-cv-598-RP |
| | § | |
| MARI ROBINSON, SHARON PEASE, | § | |
| and KARA KIRBY, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants' Motion for Summary Judgment, filed November 18, 2016, (Dkt. 55); Plaintiffs' Response to Defendants' Motion for Summary Judgment, filed December 14, 2016, (Dkt. 72); and Defendants' Reply, filed December 20, 2016, (Dkt. 73-1). Having reviewed the pleadings and the relevant legal authorities, the Court issues the following order.

### I. Background

On October 22, 2013, Defendants Sharon Pease and Kara Kirby, both investigators with the Texas Medical Board ("TMB"), served an administrative subpoena instanter on the medical office of Plaintiff Dr. Joseph A. Zadeh ("Plaintiff").[1] The subpoena bore the electronic signature of Defendant Mari Robinson, the Executive Director of the TMB, and demanded immediate production of the medical records of sixteen of Plaintiff's patients, including the medical records of Plaintiff Jane Doe. Defendants Pease and Kirby were accompanied by two agents with the Drug Enforcement Agency ("DEA"), which was involved in an ongoing criminal investigation of Plaintiff's prescription of controlled substances to the patients under his care.

---

[1] For simplicity and clarity, the Court hereinafter refers to Plaintiff Joseph Zadeh simply as "Plaintiff," but the Court acknowledges that Plaintiff Jane Doe remains a party in the case. The Court's analysis and conclusion in this order apply equally to the identical claims asserted by each plaintiff.

1

Plaintiff asserts that Defendants' use of an administrative subpoena instanter to demand immediate production of medical records violated his Fourth Amendment rights, as well as his rights to due process and to privacy. Accordingly, on July 17, 2015, Plaintiff filed this lawsuit, pursuant to 42 U.S.C. § 1983, seeking monetary damages and declaratory relief. On October 9, 2015, Defendants filed a motion to dismiss asserting qualified immunity as a defense. Defendants argued that the subpoena and execution thereof were reasonable and valid exercises of the TMB's authority to subpoena medical records, Tex. Occ. Code § 153.007; 22 Tex. Admin. Code § 179.4(a), or alternatively of the TMB's authority to inspect pain management clinics, Tex. Occ. Code § 168.00 *et seq.*; Tex. Admin. Code § 195.3.

The Court granted in part and denied in part Defendants' motion to dismiss. (*See* Am. Order, Dkt. 40). The Court dismissed Plaintiff's claims for declaratory relief pursuant to the *Younger* abstention doctrine, dismissed his claims for monetary relief against Defendant Robinson in her official capacity under the doctrine of sovereign immunity, and dismissed his due process and privacy claims under the doctrine of qualified immunity. With regard to Plaintiff's Fourth Amendment claims, the Court followed the traditional two-step qualified immunity analysis. On step one, the Court found Plaintiff had alleged conduct that, if proven true, would constitute a violation of his Fourth Amendment rights, most pertinently his right to meaningful precompliance judicial review prior to being subject to an administrative search. On step two, the Court found that Defendants were largely entitled to qualified immunity because the law in this area was not clearly established at the time the subpoena was served. However, the Court found that the allegations, construed in a light most favorable to Plaintiff, were sufficient to overcome the qualified immunity defense. Specifically, the Court reasoned that to the extent Defendants overstepped their statutory authorities by searching and inspecting Plaintiff's office and records, they were not entitled to

2

qualified immunity. Thus, the Court denied Defendants' motion to dismiss with regard to Plaintiff's Fourth Amendment claims.

On November 18, 2016, Defendants filed their motion for summary judgment, arguing they are entitled to qualified immunity on all remaining claims. Plaintiff filed his response on December 14, 2016, and the motion is now ripe for review.

## II. Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by presenting evidence indicating there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court views the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no

reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F. 3d at 174.

### III. Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). There are two steps to determining whether a defendant is protected by qualified immunity. *See Saucier v. Katz*, 533 U.S. 194 (2001). First, the court asks whether the official "violated a statutory or constitutional right." *Morgan*, 659 F.3d at 371 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). Second, the court asks whether "the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2083). A court may, at its discretion, skip the first step and begin its analysis by asking whether the right in question was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Finally, "[e]ven if the government official's conduct violates a clearly established right, the official is entitled to qualified immunity if his conduct was objectively reasonable." *Cynthia M. Davis v. Michael McKinney, M.D.*, 518 F.3d, 304, 317, 5th Cir. (2008).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor." *Id.* (internal citations omitted).

## IV. Discussion

Only a tiny sliver of Plaintiff's allegations survived Defendants' motion to dismiss. The Court previously held that the doctrine of qualified immunity barred Plaintiff's claim that the TMB violated his Fourth Amendment rights when it served his office with an administrative subpoena instanter demanding immediate production of sixteen patients' medical records. Subject to an exception for closely regulated industries, an administrative agency cannot search a business without first providing an opportunity for precompliance judicial review. *See City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2452 (2015). However, in light of the Fifth Circuit's decision in *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629 (5th Cir. 2000), the Court concluded that "Defendants could reasonably have believed that the medical profession is considered a closely regulated industry, and, thus, fairly concluded that the precompliance review requirement does not apply to the search of a medical office." (Am. Order, Dkt. 40, at 20). The Court further held that Defendants could have reasonably relied on *Beck* to conclude that their use of a subpoena instanter complied with the requirements of *New York v. Burger*, 482 U.S. 691 (1987), which articulates the more lenient standard for searches of closely regulated industries. (Am. Order, Dkt. 40, at 22). Accordingly, the Court has already resolved that Defendants cannot be held liable for their use of an administrative subpoena instanter, because the relevant law was not clearly established at the time the subpoena was served.

However, Plaintiff alleges that Defendants did more than simply serve a subpoena instanter. He also alleges that Defendants overstepped the scope of the subpoena by inspecting his office and searching his records. It was this allegation that allowed Plaintiff's Fourth Amendment claim to survive Defendants' motion to dismiss. The Court reasoned that to the extent Defendants' conduct exceeded their statutory subpoena authority it also exceeded their constitutional authority and the scope of their immunity. The Court wrote:

> *Beck* provides no support for the proposition that a statute can serve as an adequate substitute for a warrant in a case where the search goes beyond what is authorized by the statute. In *Beck*, there was no dispute as to whether the Texas Controlled Substances Act authorized the inspection of the dentist's office. At issue was simply whether the language of the statute provided sufficient clarity to serve as a substitute for a warrant. Here, Plaintiffs contend that Defendants overstepped their statutory authority when they physically searched and inspected Dr. Zadeh's office and files. If true, Defendants' conduct was clearly inconsistent with *Burger* which requires that a warrantless inspection at the very least be conducted pursuant to a regulatory scheme.
>
> . . .
>
> [I]t was clearly established that if a state official executes a warrantless search of a closely regulated business, the search must, at the very least, be conducted pursuant to a clear regulatory scheme. This basic rule ensures that the owner of a business is given fair notice that his or her business may be subject to warrantless inspection.

(*Id.* at 22–23). In light of this reasoning, the Court cautioned that "its finding that the alleged search exceeded TMB's authority is limited to the allegation that Defendants searched and inspected Dr. Zadeh's office and records." (*Id.* at 13 n.3).

Nonetheless, the briefing submitted by both parties on Defendants' motion for summary judgment largely relitigates issues already resolved. For example, Defendants argue in their motion that Plaintiff's assistant consented to voluntarily produce the records requested in the subpoena, (Defs.' Mot. Summ. J, Dkt. 55, at 10–13, 15), and that the Fourth Amendment was not violated because Plaintiff was afforded an opportunity for precompliance review, (*id.* at 15–16). The Court has already held that even if there was no consent and no opportunity for precompliance review, Defendants were still entitled to qualified immunity with regard to their decision to serve Plaintiff's office with a subpoena instanter.

The Court thus focuses its analysis here on the sole remaining issue: whether Defendants exceeded their statutory subpoena authority by searching and inspecting Plaintiff's office and

records.[2] The Court begins with the preliminary question of whether Defendant Mari Robinson, the former Executive Director of the TMB, was sufficiently involved in the service of the subpoena to be held liable, either directly or indirectly under a theory of supervisory liability. The Court then turns to the principal question of whether Defendants Sharon Pease and Kara Kirby overstepped the scope of the subpoena when they served it on October 22, 2013.

## A.  Defendant Mari Robinson

Plaintiff asserts claims for both direct and supervisory liability against Defendant Mari Robinson, the former Executive Director of the TMB. A supervisor facing a Section 1983 claim cannot be held vicariously liable for the misdeeds of her subordinate under a theory of *respondeat superior*. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). However, a supervisor can be held directly liable if she "affirmatively participates in the acts that cause the constitutional deprivations." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). A supervisor can also be held indirectly liableif she "implements unconstitutional policies that causally result in the constitutional injury." *Id.* Here, Plaintiff has failed to demonstrate a fact issue as to either type of liability.

### 1.  Direct Liability

It is uncontested that Defendant Robinson was not personally present during the service of the subpoena on October 22, 2013. Moreover, the evidence indicates Robinson played no direct role in authorizing the issuance and execution of the subpoena. The TMB issues several thousand subpoenas each year. (Robinson Decl., Dkt. 55-2, ¶ 6). By statute, the Executive Director of the TMB is given the authority to issue subpoenas on behalf of the agency. *See* Tex. Occ. Code.

---

[2] The issue is actually somewhat more complicated, as even if Defendants conduct was not consistent with their statutory subpoena authority, it may have been consistent with their statutory authority to inspect pain management clinics, Tex. Occ. Code § 168.00 et seq.; Tex. Admin. Code § 195.3. Because the Court finds, *infra*, Defendants did not overstep their subpoena authority, the Court does not reach the question of whether conduct was a valid exercise of the TMB's authority to inspect pain management clinics.

§ 153.007. Robinson, continuing a policy already in place when she assumed the role of executive director, delegated her subpoena authority to investigation managers and other TMB employees. (Robinson Decl., Dkt. 55-2, ¶¶ 5–6). Robinson did not personally sign subpoenas. (*Id.* ¶ 6). Rather, she authorized other TMB employees to place her electronic signature on subpoenas issued by the TMB. (*Id.* ¶ 6). The subpoena at issue in this case was jointly authorized by Defendant Sharon Pease and her supervisor, Belinda West, (Pease Decl., Dkt. 55-1, ¶¶ 3–5), and served on Plaintiff's office by Defendant Pease and her subordinate, Defendant Kara Kirby, (*id.* ¶ 8). Defendant Robinson "did not personally approve the issuance of the subpoena" and at the time of its execution "had no personal knowledge concerning the [administrative complaint] against Dr. Zadeh." (Robinson Decl., Dkt. 55-2, ¶¶ 3–4). Accordingly, because Defendant Robinson did not "affirmatively participate" in the issuance or execution of the subpoena at issue in this case, she cannot be held directly liable for any consequent constitutional violations. *Porter*, 659 F.3d at 446 (quoting *Gates*, 537 F.3d at 435).

2. **Supervisory Liability**

A supervisor who does not affirmatively participate in unconstitutional conduct may still be held liable if she implements an unconstitutional policy that causally results in a constitutional injury. *Porter*, 659 F.3d at 446 (quoting *Gates*, 537 F.3d at 435). Plaintiff points to a wide array of facts and allegations that he believes supports his contention that Robinson should be held liable as a supervisor. (*See* Resp. to Defs.' Mot. Summ. J., Dkt. 72, at 28). Broadly, he makes two arguments: first, Robinson implemented a policy that "encouraged TMB investigators to tour the office and to observe storage of controlled drugs and drug records when conducting onsite investigative activities," (*id.* at 30); and second, the fact that Robinson "did not know anything about . . . the subpoena . . . [or] this case" evinces a "fail[ure] to supervise or train . . . subordinate official[s]" that "amounts to deliberate indifference," (*id.* at 28–29).

First, Plaintiff argues Robinson implemented a policy directing TMB investigators, when serving subpoenas instanter, to tour and inspect the premises. Plaintiff points to the Texas Medical Board Policy/Procedure for Onsite Investigative Activities, which instructs TMB investigators, when visiting a medical office, to "[t]our the office" and to "[o]bserve storage of controlled drugs and drug records." (Dkt. 72, at 205). However, "[i]n the event the Respondent refuses to cooperate with the TMB," the policy states that "the TMB staff will not attempt to obtain [the requested information] or interview the Respondent . . . [and] will then leave the office." (*Id.*) The policy does not direct TMB staff to tour or inspect a medical office without consent. Accordingly, the policy does not direct TMB staff to conduct unconstitutional administrative searches and, therefore, cannot serve as the basis for a supervisory liability claim. *See City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2451 (2015) (observing that an administrative search is constitutional "where the subject of a search has consented"); *Porter*, 659 F.3d at 446 (quoting *Gates*, 537 F.3d at 435) (holding that a supervisor can only be held liable for implementing an "unconstitutional policy").

Second, Plaintiff argues that Defendant Robinson failed to adequately train and supervise her subordinates. "To succeed on a failure to train claim, a plaintiff must show that '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Gates*, 537 F.3d at 435 (quoting *Estate of Davis*, 406 F.3d at 381). The thrust of Plaintiff's argument is that Robinson abdicated her supervisory responsibilities when she delegated her authority to issue subpoenas to other TMB employees. However, Robinson's decision to delegate her subpoena authority is expressly authorized by state regulation, is consistent with the precedent set by her predecessors, and, per Robinson's testimony, is a pragmatic necessity in light of the thousands of subpoenas the TMB issues every year. 22 Tex.

Admin. Code § 161.7(c) ("The executive director may delegate any responsibility or authority to an employee of the board. . . ."); (Robinson Decl., Dkt. 55-2, ¶¶ 5–6).

Plaintiff points to a Texas Attorney General Opinion from 2010 that concluded the Board of the Texas Department of Motor Vehicles may not delegate its authority to issue final orders in contested cases to the director of the agency's Motor Vehicle Division. Tex. Att'y Gen. Op. GA-0820 (2010). The Attorney General opined that a statute allowing the Motor Vehicle Division director to "delegate any of the director's powers to one or more of the division's employees" does not impliedly "authorize the Board to delegate its decision-making powers to the director." *Id.* (quoting Tex. Occ. Code. § 2301.154). Similarly, the Attorney General determined that a statute authorizing the Board to delegate "routine matters" to department employees does not allow delegation of "final orders." *Id.* (quoting Tex. Transp. Code § 1003.002). This holding is simply not analogous to the present case. Here, the TMB is authorized by statute to delegate its subpoena authority to the Executive Director, Tex. Occ. Code §§ 153.007(a)–(b), and has, pursuant to its broad authority to adopt rules governing its own procedures, *id.* § 153.001, promulgated a regulation allowing the Executive Director to delegate her authorities to other TMB employees, *id.* § 22 Tex. Admin. Code § 161.7(c). Unlike the Board of the Texas Department of Motor Vehicles, the TMB is not attempting to circumvent a limited right to delegate routine matters by construing its director's right to delegate as its own. Accordingly, the Court is not persuaded that Defendant Robinson's decision to delegate her subpoena authority to other TMB employees is contrary to Texas law.

More to the point, the Court does not need to decide now whether or to whom the Executive Director of the TMB can delegate her subpoena authority. For Plaintiff's supervisory liability claim to survive summary judgment, he must demonstrate a fact issue as to whether Defendant Robinson's decision to delegate her subpoena authority to other TMB employees

10

amounts to "deliberate indifference" toward his constitutional rights. *Gates*, 537 F.3d at 435. In light of the express regulatory authority for the delegation, the precedent set by her predecessors, and the sheer volume of subpoenas issued every year by the TMB, the Court easily concludes it does not. At the very least, Defendant Robinson's delegation was clearly not objectively unreasonable. *See Porter*, 659 F.3d at 446 (noting that when qualified immunity is invoked as a defense to a supervisory liability claim, the plaintiff must meet the deliberate indifference standard and the more stringent objective reasonableness standard).

The Court concludes there is insufficient evidence in the record to support Plaintiff's claims that Defendant Robinson implemented an unconstitutional policy and that she failed to supervise her subordinates in a manner amounting to deliberate indifference. Even if Plaintiff could prove these necessary predicates to his supervisory liability claim, the claim would nonetheless fail because Defendant Robinson's conduct did not result in a constitutional injury, as there is no evidence Defendants Pease and Kirby inspected Plaintiff's office or searched his records. The Court discusses the allegations as to Defendants Pease and Kirby below.

## B. Defendants Sharon Pease & Kara Kirby

### 1. The Execution of the Subpoena Instanter

The facts surrounding the execution of the subpoena at issue in this case are largely undisputed. On the morning of October 22, 2013, Defendants Pease and Kirby, both TMB investigators, went to Plaintiff's office to serve a subpoena instanter for the medical records of sixteen of Plaintiff's patients. (Schlueter Dep., Dkt. 55-3, at 17:13–20:13; Subpoena Duces Tecum, Dkt. 55-4). Defendants Pease and Kirby were accompanied by two DEA agents. (Schlueter Dep., Dkt. 55-3, at 61:11–16). When they arrived, the only person present was Kathryn Schlueter, Plaintiff's medical assistant and office manager. (*Id.* at 13:1–3, 17:25–18:1). Pease handed the

11

subpoena to Schlueter. (*Id.* at 19:16–18). Schlueter then informed Pease and Kirby that Plaintiff was not available as he was travelling home from Florida. (*Id.* at 19:7–13). She invited the investigators to take a seat while she found out more information about his whereabouts and expected return. (*Id.*). While the investigators waited, Schlueter spoke with Plaintiff, his lawyer, and his brother, who is also a lawyer, over the phone. (*Id.* at 26:6–27:1). During this time, Pease periodically asked Schlueter when Plaintiff would arrive. (*Id.* at 37:10–25). Schlueter testified that Pease told her if she did not produce the records, "they would proceed in suspending Dr. Zadeh's license."[3] (*Id.* at 21:1–4). In response, Schlueter escorted the investigators into a separate conference room and produced the records requested in the subpoena. (*Id.* at 22:1–23:8).

For most of the time the investigators were at Plaintiff's office, they remained in either the waiting area or in the conference room. However, the record suggests that on a few instances Defendant Pease ventured into other parts of the office. On one occasion, Pease approached Schlueter at her desk in the reception area to ask whether she had heard from Plaintiff. (*Id.* at 75:20–77:2, 82:19–84:1). As the two were conversing, Pease followed Schlueter into two exam rooms, which Schlueter had entered in order to use a shredder and to access a computer. (*Id.*). While in one of the exam rooms, Peace asked Schlueter whether that was where they kept their controlled substances. (*Id.* at 24:11–13). Schlueter responded that they did not keep any controlled substances in the office. (*Id.*). On another occasion, Pease approached Schlueter in a storage room, where Schlueter was in the process of pulling the records requested in the subpoena. (*Id.* at 84:22–85:10). Pease asked Schlueter whether the investigators could use the office's copy machine, because they were having issues with their portable scanner. (*Id.* at 88:4–87:7).

---

[3] Pease denies she made this statement, but testified she may have told Schlueter that Plaintiff was obligated to comply with the subpoena and that failure to do so "could result in additional disciplinary action." (Pease Dep. Dkt. 55-10, at 75:5–14).

Plaintiff contends that Defendant Pease's two excursions out of the waiting area and conference room and into other parts of the office constitute a search of his office, which exceeded the scope of TMB's subpoena authority. The Court disagrees. Plaintiffs are unable to point to any evidence showing either Defendant Pease or Defendant Kirby reviewed any files that were not provided by Schlueter or entered any part of the office unaccompanied by Schlueter. The record establishes that on the only occasions Pease ventured out of the waiting area and conference room it was simply to speak to Schlueter. The record also establishes that neither Pease nor Kirby copied, reviewed, or even requested records not specifically listed on the subpoena. Finally, the record makes clear that as soon as Pease and Kirby were asked to leave the premises, they promptly did so.

Thus, Plaintiff's allegation that Defendants conducted a thorough search and inspection of his office and records finds no support in the record. The available evidence consistently indicates that Defendants' presence at Plaintiff's office was solely to execute the subpoena instanter and, therefore, their presence did not violate the Fourth Amendment. *See Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 413 (1984) (holding that "entry into [a] public lobby . . . for the purpose of serving an administrative subpoena is scarcely the sort of governmental act which is forbidden by the Fourth Amendment" even when "[t]he administrative subpoena itself did not authorize either entry or inspection of appellee's premises" but "merely directed appellee to produce relevant . . . records"). Even if Defendant Pease's minor excursions out of the waiting area and conference room did constitute a search of Plaintiff's office beyond what was necessary to serve the subpoena, there is no evidence that she acted in an objectively unreasonable manner; rather, the evidence makes clear she intended only to communicate with Plaintiff's assistant about matters relevant to the subpoena. *See Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008) ("Even if the government official's conduct violates a clearly established right, the official is entitled to qualified immunity if his conduct was

13

objectively reasonable."); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury.").

In sum, Defendant Pease and Kirby have demonstrated, beyond any genuine issue of fact, that their conduct on October 22, 2013 was limited to executing the subpoena and, therefore, within the scope of their statutory subpoena authority. The Court has previously held that Defendants are entitled to qualified immunity as long as their conduct was consistent with their statutory subpoena authority because they could have reasonably believed such conduct was lawful in light of the Fifth Circuit's holding in *Beck*, 204 F.3d 629. Thus, the Court concludes Defendants Pease and Kirby are appropriately awarded summary judgment on all remaining claims.

2. **DEA Involvement**

As a final matter, the Court addresses Plaintiff's argument that "the issuance, service, and execution of the subpoena instanter for medical and billing records was nothing more than a pretext for the TMB to assist the DEA with their own criminal investigation using the TMB's subpoena authority as . . . cover." (Pls.' Resp. to Defs.' Mot. Summ. J., Dkt. 72, at 9). Plaintiff asserts that evidence produced in discovery suggests Defendants issued the subpoena at the request of the DEA. Specifically, Plaintiff points to an email sent from DEA agent Michelle Penfold to TMB employee Belinda West stating, "I'm at a point in the criminal case that I need to interview Dr. Zadeh and review his patient files. Would it be possible for an investigator with the TMB to accompany me?" (Email Correspondence, Dkt. 73-1, at 16–17). Penfold attached to the email a TMB "Complaint Form", (Complaint Form FO-1, Dkt. 73-1, at 18–19), and a DEA form summarizing the law enforcement investigation of Plaintiff's medical practice, (*id.* at 20–40). In light of this evidence, Plaintiff urges the Court to reconsider its prior conclusion that Defendants are

entitled to qualified immunity for the service of the subpoena, arguing that even an otherwise valid search is unconstitutional if executed solely as a pretext for a criminal investigation.

Plaintiff is correct in noting that "[e]ven under a valid inspection regime, the administrative search cannot be pretextual." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 197–98 (5th Cir. 2009); *accord Burger,* 482 U.S. at 724 ("In the law of administrative searches, one principle emerges with unusual clarity and unanimous acceptance: the government may not use an administrative inspection scheme to search for criminal violations."). However, it is not therefore the case that any administrative search that may be of use to a criminal investigation is necessarily pretextual. The Fifth Circuit has expressed some "concern about 'where to draw the line' between administrative inspections and pretextual searches," but has made clear that "suspicions of criminal wrongdoing" alone do not render an administrative search pretextual. *Club Retro*, 568 F.3d at 198 n.7 (quoting *Bruce v. Beary*, 498 F.3d 1232, 1242 (11th Cir. 2007)). Moreover, in *Beck*, the Fifth Circuit upheld the constitutionality of an administrative search of a medical office conducted by the State Board of Dental Examiners investigator who was accompanied by a law enforcement officer from the controlled substance division of the Texas Department of Public Safety. 204 F.3d at 638. In its analysis, the Court of Appeals relied on a footnote in *United States v. Villamonte–Marquez*, 462 U.S. 579 (1983), in which the Supreme Court approved "an administrative search of a vessel for marijuana even though U.S. Customs agents were accompanied by state law enforcement officers, and were following an informant's tip that the ship was carrying contraband." *Beck*, 204 F.3d at 638 (citing *Villamonte–Marquez*, 462 U.S. 579 at 584 n.3).

While the law is admittedly somewhat unclear, the Court comfortably concludes that the subpoena at issue here was not pretextual, as it was issued in furtherance of an actual TMB investigation that culminated in an administrative action against Plaintiff. (*See* Subpoena Duces

15

Tecum, Dkt. 55-4; Complaint, SOAH Docket No. 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, Dkt. 55-8). It therefore cannot be said that any criminal investigation on the part of the DEA was the "sole" reason the subpoena was issued. *See Club Retro*, 568 F.3d at 198 (quoting *United States v. Johnson*, 994 F.2d 740, 742, 10th Cir. 1993) (emphasis in original) ("[A]n administrative inspection is a sham if it is 'a pretext *solely* to gather evidence of criminal activity.'") Plaintiff's contention that the subpoena was purely pretextual is further undercut by the fact that the DEA issued its own subpoena requesting many of the same documents requested previously by the TMB. *See U.S. v. Zadeh*, 820 F.3d 746, 749 (5th Cir. 2016). Moreover, even if the TMB subpoena was simply a pretext for the DEA's criminal investigation, Defendants are nonetheless entitled to qualified immunity: in light of the Fifth Circuit's decision in *Beck*, 204 F.3d at 638, sanctioning closely analogous conduct, it cannot be said that the law in this area was "clearly established" at the time the subpoena was served. *E.g. Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). Thus, none of the evidence of the DEA's involvement in the TMB's investigation into Plaintiff's medical practice is sufficient to disturb the Court's conclusion that Defendants are protected by the doctrine of qualified immunity and therefore entitled to summary judgment.

## V. Conclusion

Defendants' Motion for Summary Judgment, filed November 18, 2016, (Dkt. 55), is hereby **GRANTED.**

**SIGNED** on February 17, 2016.

                                                                         _____
                                                                         ROBERT PITMAN
                                                                         UNITED STATES DISTRICT JUDGE