IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH A. ZADEH and JANE DOE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:15-cv-598-RP |
| | § | |
| MARI ROBINSON, SHARON PEASE, | § | |
| and KARA KIRBY, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Plaintiffs' Motion to Alter or Amend the Judgment Pursuant to Federal

Rule of Civil Procedure 59(e). (Dkt. 110). For the following reasons, the Court denies Plaintiffs'

motion.

**I. Background**

In this action, a doctor and one of his patients assert that the Texas Medical Board's use of

an administrative subpoena instanter to demand immediate production of medical records violated

their Fourth Amendment rights as well as their rights to due process and to privacy.

On, April 14, 2016, the Court granted in part and denied in part Defendants' motion to

dismiss. (Order, Dkt. 37; Am. Order, Dkt. 40). The Court dismissed Plaintiffs' claims for declaratory

relief pursuant to the *Younger* abstention doctrine, dismissed their claims for monetary relief against

Defendant Mari Robinson in her official capacity under the doctrine of sovereign immunity, and

dismissed their due process and privacy claims under the doctrine of qualified immunity. With

regard to Plaintiffs' Fourth Amendment claims, the Court followed the traditional two-step qualified

immunity analysis. On step one, the Court found Plaintiffs had alleged conduct that, if proven true,

1

would constitute a violation of their Fourth Amendment rights, most pertinently their right to meaningful precompliance judicial review prior to being subject to an administrative search. On step two, the Court found that Defendants were largely entitled to qualified immunity because the law in this area was not clearly established at the time the subpoena was served. However, the Court found that the allegations, construed in a light most favorable to Plaintiffs, were sufficient to overcome the qualified immunity defense. Specifically, the Court reasoned that, to the extent Defendants overstepped their statutory authorities by searching and inspecting Dr. Zadeh's office and records, they were not entitled to qualified immunity. Thus, the Court denied Defendants' motion to dismiss with regard to Plaintiffs' Fourth Amendment claims.

On February 17, 2017, the Court granted Defendants' motion for summary judgment. (Order, Dkt. 108). The Court found that Defendants had demonstrated, beyond any genuine issue of fact, that their conduct was limited to serving and executing the subpoena instanter and therefore fell within the scope of their statutory subpoena authority. In light of the Court's previous holding that as long as Defendants acted within the scope of their statutory subpoena authority they could have reasonably believed their conduct was lawful, the Court concluded Defendants were entitled to qualified immunity. The Court also considered and rejected a variety of arguments asserted by Plaintiffs for the first time at summary judgment, most pertinently the argument that the administrative subpoena at issue was a pretext served in furtherance of a federal criminal investigation. Accordingly, the Court awarded Defendants summary judgment on all remaining claims and entered final judgment.

Plaintiffs now move for relief from the final judgment pursuant to Federal Rule of Civil Procedure 59(e). (Mot. to Alter or Am. J., Dkt. 110).

## II. Legal Standard

A motion for reconsideration under Federal Rule of Civil Procedure 59(e) "calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 581 (5th Cir. 2002). Such a motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Rather, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1998). To prevail on a Rule 59(e) motion, the movant must demonstrate "(1) an intervening change in controlling law; (2) new evidence not previously available; or (3) the need to prevent a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479.

## III. Discussion

Plaintiffs move the Court, under Federal Rule of Civil Procedure 59(e) to reconsider the propriety of the final judgment previously entered. In support of their motion, Plaintiffs offer a lengthy list of criticisms of the Court's reasoning at previous stages of the litigation, including the Court's orders granting in part Defendants' motion to dismiss, (Am. Order, Dkt. 40), and granting in whole Defendants' motion for summary judgment, (Order, Dkt. 108). Plaintiffs' motion does not contend that there has been a change in controlling law since the Court entered its previous orders. Similarly, Plaintiffs, with one exception discussed below, do not offer any new evidence. Accordingly, the only remaining basis for the motion is "the need to prevent a clear error of law or prevent manifest injustice." *Benjamin Moore*, 318 F.3d at 629.

Having reviewed all of Plainitffs' arguments, the Court is unpersuaded that any of its previous orders are clearly erroneous or risk a manifest injustice. Rather, Plaintiffs' motion is an inappropriate attempt to relitigate an array of arguments already thoroughly considered and resolved. *See Salomon v. Wells Fargo Bank, N.A.,* No. 10-cv-106, 2010 WL 2900783, at *2 (W.D. Tex. July 22, 2010) (quoting *Crouch v. J.C. Penney Corp.,* 564 F. Supp. 2d 636, 640 (E.D. Tex. 2008)) ("A motion to reconsider is not intended to be a regular avenue of relief. Indeed, district court opinions 'are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'"). Accordingly, the Court denies Plaintiffs' motion for the reasons stated in its previous orders.

Out of an abundance of caution, however, the Court proceeds to briefly address the arguments for reconsideration offered by Plaintiffs.

*a.*

First, Plaintiffs point to evidence offered at summary judgment that they contend indicates the subpoena instanter was not a legitimate attempt by the TMB to inspect a registered pain management clinic or to investigate whether Dr. Zadeh's medical clinic was required to register as a pain management clinic under Texas law. (Mot. Alter or Am. J., Dkt. 110, at 1–3). Plaintiffs emphasize that Dr. Zadeh's practice was not registered as a pain management clinic and argue that it was not required to register as such because it fell within scope of certain exemptions to the law regulating pain management clinics. Moreover, Plaintiffs assert that the subpoena could not have been targeted at ascertaining whether Dr. Zadeh's practice met the statutory criteria for a pain management clinic, as the subpoena did not request enough records to determine the nature of the medication prescribed to the majority of his patients. Plaintiffs believe the Court erred by failing to discuss this evidence in its order granting Defendants' summary judgment motion.

As the Court has explained in previous orders, Defendants contend that the subpoena instanter was issued pursuant to two distinct and independent sources of statutory authority: first, TMB's authority to issue subpoenas, and, second, TMB's authority to inspect pain management clinics. (*See* Am. Order, Dkt. 40, at 11–12; Order, Dkt. 108, at 2). In its order granting Defendants' motion for summary judgment, the Court found that Defendants' conduct was authorized by its statutory subpoena authority and therefore did "not reach the question of whether [Defendants'] conduct was a valid exercise of the TMB's authority to inspect pain management clinics." (Order, Dkt. 108, at 7 n.2). The Court did not err in failing to consider Plaintiffs' arguments relating to the TMB's authority to inspect pain management clinics. Rather, the Court elected not to consider those arguments as they were immaterial to the Court's ultimate holding.

*b.*

Next, Plaintiffs reassert their argument that the subpoena instanter was issued as a pretext for a federal criminal investigation and was, thus, not a valid administrative search. (Mot. Alter or Am. J., Dkt. 110, at 1–3). In its summary judgment order, the Court acknowledged that administrative searches may not be used as a pretext to search for criminal wrongdoing, but noted that courts have struggled to delineate what constitutes a purely pretextual search. (Order, Dkt. 108, at 15 (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 197–98 & n.7 (5th Cir. 2009))). The Court observed that in *Beck v. Texas State Bd. of Dental Examiners*,

> the Fifth Circuit upheld the constitutionality of an administrative search of a medical office conducted by a State Board of Dental Examiners investigator who was accompanied by a law enforcement officer from the controlled substances division of the Texas Department of Public Safety. [204 F.3d 629, 638 (5th Cir. 2000)]. In its analysis, the Court of Appeals relied on a footnote in *United State v. Villamonte-Marquez*, 462 U.S. 579 (1983), in which the Supreme Court approved "an administrative search of a vessel for marijuana even though U.S. Customs agents were accompanied by state law enforcement officers, and were following an

informant's tip that the ship was carrying contraband." *Beck*, 204 F.3d at 638 (citing *Villamonte-Marquez*, 462 U.S. 579 at 584 n.3).

(*Id.*) Ultimately, the Court concluded that Defendants are entitled to qualified immunity because, in light of the Fifth Circuit's decision in *Beck*, it cannot be said that their conduct violated a clearly established right. (*Id.*)

Plaintiffs make a number of arguments attempting to distinguish the instant case from *Beck* and *Villamonte-Marquez*. Mainly, Plaintiffs assert that there is no evidence that the TMB would have served the subpoena instanter but for the Drug Enforcement Agency's request. Yet, Plaintiffs do not expressly point to any specific right that they contend was clearly established at the time the subpoena was served. Plaintiffs intimate that the law establishes that an administrative search is invalid unless it can be shown that the search would have occurred even without the involvement of law enforcement but point to no authority for that proposition. Both *Beck* and *Villamonte-Marquez* provide support for the counter-proposition that an administrative search may be lawful even if it was conducted primarily for law enforcement purposes. In *Beck*, the Fifth Circuit upheld an administrative search that was allegedly "conducted for purposes of uncovering criminal activity" and "motivated by suspicions of criminal wrongdoing." 204 F.3d at 638-39. In *Villamonte-Marquez*, the Supreme Court upheld an administrative search "following an informant's tip that a vessel in the ship channel was thought to be carrying marijuana." 462 U.S. at 548 n.3. In both cases, the state agencies conducting the administrative searches were accompanied by law enforcement officers.

Once a defendant pleads qualified immunity, the burden shifts to the plaintiff to rebut the defense by pointing to clearly established law that the defendant has violated. *See Wyatt v. Fletcher*, 718 F.3d 496, 510 n.19 (5th Cir. 2013). Plaintiffs have failed to satisfy this burden. Rather, Plaintiffs' strained attempts to differentiate the present case from governing Fifth Circuit and Supreme Court

cases at the very most suggest that the law governing pretextual administrative searches remains muddled and requires clarification.

Plaintiffs assert that this Court's holding "effectively provides all law enforcement with a recipe to circumvent the Fourth Amendment." (Mot. Alter or Am. J., Dkt. 110, at 4). Not so. To the extent that an administrative agency may conduct a search in furtherance of a criminal investigation, such a search must still comply with Fourth Amendment law governing administrative searches. (*See* Am. Order, Dkt. 40, at 8–11). Moreover, it remains true that an otherwise legitimate administrative search "cannot be pretextual." *See Club Retro*, 568 F.3d at 198. Here, the Court simply holds that the law demarcating the line between a legitimate administrative search and an illegal pretextual search has not been defined with sufficient clarity to allow Plaintiffs to overcome Defendants' qualified immunity defense.

*c.*

Plaintiffs also argue that the Court erred in declining to strike from the summary judgment record a complaint submitted by the DEA to the TMB. (Defs.' Reply Ex. A, Dkt. 106, at 13–39). The complaint details the DEA's investigation into Dr. Zadeh's medical practice and includes email correspondence between DEA and TMB employees. (*Id.*) In actuality, Plaintiffs never moved to strike the DEA complaint. Rather, Defendants moved for leave to file under seal their reply in support of their motion for summary judgment including the DEA complaint, which was attached as an exhibit. (Mot. Leave File Under Seal, Dkt. 73). Defendants wished for their reply and the attached DEA complaint to be sealed pending resolution of a dispute between the parties as to whether the DEA complaint should be designated "Confidential" under the protective order. (Mot. Enforce Protective Order, Dkt. 76). In their response to the motion for leave to file under seal,

Plaintiffs included not only arguments as to why the DEA complaint should not be sealed but also unrelated objections to the admissibility of the DEA complaint. (Resp., Dkt. 74).

Magistrate Judge Austin upheld Defendants' designation of the DEA complaint as "Confidential" under the protective order and the Court accordingly granted Defendants' motion to file it under seal. (Order, Dkt. 105; Text Order Dated 2/10/17). However, the Court never ruled on the objections to the admissibility of the DEA complaint embedded in Plaintiffs' response. The Court does so now and finds that Plaintiffs' objections to the consideration of the DEA complaint at summary judgment lack merit for the following reasons.

Plaintiffs argued that the DEA complaint is (1) irrelevant, (2) hearsay, and (3) unauthenticated. (*See* Resp., Dkt. 74, at 2–4). First, the DEA complaint is clearly relevant to the issues of whether the TMB had reason to issue the subpoena instanter and to initiate an administrative action against Dr. Zadeh and whether the issuance of the subpoena was pretextual. Plaintiffs' objection to the complaint's relevance is odd, to say the least, given that Plaintiffs first introduced a portion of the complaint as evidence in support of their response to the motion for summary judgment. Defendants submitted the entire complaint as an exhibit to their reply to ensure the Court could review the complete document. Plaintiffs cannot introduce a document as evidence and then subsequently argue it lacks relevance. Second, the document is not hearsay because it is not being considered for the truth of the allegations contained therein, but rather as evidence probative of the reasons the TMB issued the subpoena instanter. Finally, while the complaint may have initially been unauthenticated, Defendants subsequently provided an affidavit attesting to its authenticity. (*See* Rodriguez Decl., Dkt. 79-1).

Thus, the Court overrules Plaintiffs' objections to the consideration of the DEA complaint. Yet, ironically, even if the Court were to strike the complaint it would only bolster the Court's

conclusion that Defendants' motion for summary judgment should be granted, as the document's principal relevance is as evidence in support of Plaintiffs' argument that the subpoena at issue was issued as pretext for a criminal investigation.

Plaintiffs also assert that if the Court elects to consider the DEA complaint, it should also consider new evidence that the DEA recently renewed Dr. Zadeh's prescription number. (Mot. Alter or Amend J., Dkt. 110, at at 7; Registration Certificate, Dkt. 110-1). This document is plainly irrelevant to the present litigation. The issuance of a prescription number to Dr. Zadeh by the DEA in 2016 has no bearing on whether a subpoena issued by the TMB in 2013 complied with the Fourth Amendment. Plaintiffs assert the document is relevant because it indicates many of the allegations against Dr. Zadeh in the DEA complaint must not be true, because if they were true the DEA would not have renewed his prescription number. Perhaps that is right. The Court is in no position to assess the accuracy of the allegations contained in the DEA complaint and none of the Court's reasoning turns on the truth of those allegations. So, even if the Court were to consider this evidence, it would have no effect on the Court's decision to grant Defendants summary judgment.

*d.*

In the remainder of Plaintiffs' motion for reconsideration, they rehash a laundry list of arguments already litigated. Plaintiffs argue that the Fifth Circuit's opinion in *Beck* is inapplicable to the present case because the search in that case was conducted pursuant to the Texas Controlled Substances Act, whereas the subpoena at issue in this case had no analogous statutory authority. (Mot. Alter or Am. J., Dkt. 110, at 7–8). Plaintiffs also reassert their argument that the practice of medicine is a closely regulated industry and, therefore, an administrative subpoena served on a medical practice must allow an opportunity for precompliance judicial review. (*Id.* at 8). Finally, Plaintiffs reiterate their contention that Defendants exceeded their subpoena authority by physically

inspecting Dr. Zadeh's office. (*Id.* at 9). The Court has already considered and rejected these arguments, and has provided lengthy written explanations of its reasoning. (*See generally* Am. Order, Dkt. 40; Order, Dkt. 108). The Court declines to replicate that analysis here.

### IV. Conclusion

Plaintiffs' Motion to Alter or Amend the Judgment Pursuant to Federal Rule of Civil Procedure 59(e), (Dkt. 110), is hereby **DENIED.**

**SIGNED** on May 18, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE